**Duke PENDERGRAFT and Machelle Pendergraft, Individually and d/b/a Pendergraft Stone, Appellants,**

v.

**Elias Camacho CARRILLO, Appellee.**

**No. 11–06–00337–CV.**

Court of Appeals of Texas, Eastland.

Sept. 11, 2008.

---

Michael B. Watson, deceased, Tim Copeland, Abilene, for appellants.

Frederick Dunbar, Galbreath Law Firm, Burt L. Burnett, Burnett & Burke, LLP, Abilene, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

This case arises from an on-the-job injury. Elias Camacho Carrillo's employer, Duke Pendergraft and Machelle Pendergraft, individually and d/b/a Pendergraft Stone, did not have workers' compensation insurance. Following a bench trial, the trial court entered a judgment in Carrillo's favor on his negligence claim and awarded various elements of damages to him, including damages for physical pain, mental anguish, physical impairment, and disfigurement. Because the evidence was legally insufficient to support the trial court's awards for mental anguish, physical impairment, and disfigurement damages, we reverse and remand for a new trial on liability and damages.

### Background Facts

Pendergraft Stone operated a stone quarry in Jones County, Texas. Carrillo began employment with Pendergraft Stone in March 2004, and his job consisted of picking up rocks and putting them on pallets. While at work on March 22, 2004, Carrillo sustained a non-displaced fracture of his jaw when he was struck in the face by an air compressor hose. Carrillo brought this negligence action against Duke Pendergraft and Machelle Pendergraft, individually and d/b/a Pendergraft Stone. In his petition, he alleged that his injury had resulted from the improper operation of an air hose by the Pendergrafts or their employees. Carrillo sought to recover damages for physical pain, mental

anguish, physical impairment, disfigurement, medical expenses, lost earnings, and loss of earning capacity.

The Pendergrafts retained counsel to represent them. However, their counsel later withdrew when he left private practice. The trial court set the case for trial on August 24, 2006. Duke Pendergraft represented himself at trial. Carrillo's counsel appeared for trial, but Carrillo did not attend the trial. Carrillo's counsel called two witnesses: (1) Duke Pendergraft; and (2) Jackie Collins, Carrillo's wife. Carrillo's counsel also introduced into evidence Carrillo's medical records and medical expense records.

On August 28, 2006, the trial court entered a judgment awarding Carrillo actual damages in the amount of $325,000. The Pendergrafts retained counsel. At the request of the Pendergrafts' counsel, the trial court entered findings of fact and conclusions of law. The trial court made the following findings of fact in support of the actual damages awarded in its judgment:

12. The sum of $10,704.28, if paid now in cash would fairly and reasonably compensate Elias Camacho Carrillo for the medical expenses incurred by him for the medical care and treatment of the injuries which he suffered as a result of the March 22, 2004, occurrence in question.

13. The sum of $6,210.00, if paid now in cash would fairly and reasonably compensate Elias Camacho Carrillo for the loss of earning capacity sustained by him in the past as a result of his injuries suffered by him in the occurrence in question.

14. The sum of $308,085.72, if paid now in cash, would fairly and reasonably compensate Elias Camacho Carrillo for the physical pain, mental anguish, physical impairment, and disfigurement sustained by him in the past that resulted from the March 22, 2004 occurrence in question.

## Issues on Appeal

The Pendergrafts present eight issues for review. Their first three issues challenge the sufficiency of the evidence to support the actual damages awarded by the trial court. Specifically, they assert (1) that the evidence was legally and factually insufficient to support the trial court's actual damages award of $325,000; (2) that the trial court's award of $308,085.72 for physical pain, mental anguish, physical impairment, and disfigurement was excessive; and (3) that the trial court erred in denying their motions for new trial. In their fourth issue, they contend that the trial court erred in abusing its discretion by denying their motion for new trial that was based on newly discovered evidence. In their fifth issue, they assert that the trial court abused its discretion in refusing to hold hearings on their motions for new trial. In their sixth issue, they assert that the evidence was factually insufficient to support the trial court's award of $6,210 for loss of earning capacity. In their seventh and eighth issues, they argue that the trial court erred in failing to give them credit for payments that they made to Carrillo for medical expenses and loss of earning capacity.

## Standards of Review

 We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). We review a trial court's findings of fact for legal and factual sufficiency under the same standards we apply in reviewing a jury's findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). In analyzing a legal sufficiency challenge, we must de-

termine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We must review the evidence in the light most favorable to the challenged finding, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361, 362–63 (1960)).

 In analyzing a factual sufficiency challenge, we must consider and weigh all of the evidence and determine whether the evidence in support of a finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The standard of review for an excessive damages complaint is factual sufficiency of the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.1998).

### Evidence at Trial

Duke Pendergraft testified that Machelle and he owned Pendergraft Stone. Carrillo had worked for Pendergraft Stone for about a week before the March 22, 2004 accident occurred. Pendergraft did not see the accident. Larry Lewis, an employee of Pendergraft Stone, was present when the accident occurred. Pendergraft discussed the facts of the accident with Lewis and Carrillo. Based on these discussions, Pendergraft testified that Carrillo unhooked the hose from an air compressor before the air had been bled from the compressor and that the hose flipped up and hit Carrillo. Lewis accompanied Carrillo to the emergency room in Stamford. At that time, Pendergraft was informed that Carrillo had a cut between his lip and chin and that "[i]t look[ed] pretty bad."

Carrillo's medical records from Stamford Memorial Hospital indicated that he had been hit in the mouth with the metal end of an air compressor hose and that he had a 2.5 centimeter laceration below his lip. Carrillo's medical records from Hendrick Medical Center showed that, on March 29, 2004, X-rays were taken of his mandible (jaw). The X-rays showed evidence of "a non-displaced fracture just to the left of the midline of the mandibular symphysis." Dr. Joe L. Kethley Jr., a doctor of dental surgery, performed surgery on Carrillo's left jaw on March 30, 2004. Dr. Kethley diagnosed Carrillo with an "[i]ntraorally compounded mobile fracture of the left mandible parasymphasis." During the surgery, Dr. Kethley secured a plate to Carrillo's jaw. Carrillo was discharged from Hendrick Medical Center on March 31, 2004.

Carrillo was "healing well" when he saw Dr. Kethley on April 8, 2004. On April 22, 2004, Carrillo complained to Dr. Kethley of pain in "tooth # 24." On May 13, 2004, Carrillo complained to Dr. Kethley of pain in "teeth # 22 and # 23," and Carrillo wanted to have those two teeth extracted. Dr. Kethley did not indicate in the medical

records whether Carrillo's complaints regarding his teeth were related to the March 22, 2004 injury.

Carrillo's medical records showed that, on July 6, 2004, he saw Dr. R. Neil Gibson for an earache. Dr. Gibson stated the following:

Of note also, back in March the patient had a fractured mandible. He says that is not bothering him at all. He followed up with a specialist in Abilene concerning this, got a plate for his jaw, and is doing very well.

Collins provided the only testimony relating to pain experienced by Carrillo after the accident:

Q. Do you recall [March 22, 2004] when he finally came home from work?

A. Yes, I do.

Q. And can you tell us whether or not you saw any physical injuries to his face?

A. Yes. His lip was bleeding and his teeth looked like they were broken, you know, trying to—they were loose, and his jaw looked funny, you know, and he was hurting. He was in pain.

. . . .

Q. And when he was recovering both in the hospital and afterwards was he suffering from some physical pain?

A. Yes, he was. He was hurting.

### Analysis

■ The trial court did not segregate its awards for physical pain, mental anguish, physical impairment, and disfigurement. Instead, the trial court awarded a total of $308,085.72 in damages for these four elements. The evidence showed that Carrillo sustained a non-displaced fracture in his left jaw as a result of the accident. Thus, the evidence was sufficient to support an award of damages for physical pain.

■ To recover damages for mental anguish, a plaintiff must introduce "direct evidence of the nature, duration, and severity of [his or her] mental anguish, thus establishing a substantial disruption in [his or her] daily routine" or evidence of "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). The evidence must also justify the amount awarded. *Saenz v. Fid. & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996). Collins's testimony contained two references to physical pain, but she did not testify about mental anguish. Carrillo may have suffered mental anguish as a result of his injury. However, Carrillo did not testify, and there was no testimony or other evidence that he sustained mental anguish.

■ "Physical impairment" encompasses the loss of the injured party's lifestyle, the effect of which must be substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 772 (Tex.2003); *Patlyek v. Brittain,* 149 S.W.3d 781, 785–86 (Tex.App.–Austin 2004, pet. denied). There was no evidence that Carrillo sustained physical impairment as a result of his injury.

■ "Disfigurement" has been defined as "that which impairs or injures the beauty, symmetry, or appearance of a person . . .; that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Goldman v. Torres,* 161 Tex. 437, 341 S.W.2d 154, 160 (1960); *SunBridge Healthcare Corp. v. Penny,* 160 S.W.3d 230, 252 (Tex.App.–Texarkana 2005, no pet.). Carrillo had a 2.5 centimeter laceration under his lip. However, there was no evidence that he had any scarring or other

type of disfigurement as a result of his injury.

We have set out the standards of review. When we apply those standards, we conclude that the evidence was legally insufficient to support the trial court's finding that Carrillo sustained mental anguish, *physical impairment, and disfigurement.* Therefore, we sustain the Pendergrafts' first and second issues and do not reach the remaining issues. TEX.R.APP. P. 47.1.

▆▆▆ Ordinarily, when there is legally insufficient evidence to support a finding, we reverse and render. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 86 (Tex.1992). However, in this case, the trial court failed to segregate the damages awarded for physical pain, mental anguish, physical impairment, and disfigurement, and the evidence supported an award of damages for physical pain. Therefore, we remand for another trial on all damages issues. TEX.R.APP. P. 43.3; *see Tex. Indus., Inc. v. Vaughan,* 919 S.W.2d 798, 804 (Tex.App.–Houston [14th Dist.] 1996, writ denied) (If a trial court fails to segregate damages and the evidence is factually insufficient to support an award on one element of damages, the case must be remanded for a new trial on all damages.). Because we are remanding for a new trial on claims involving unliquidated damages, we also remand for a new trial on liability. TEX.R.APP. P. 44.1(b).

### This Court's Ruling

We reverse the judgment of the trial court, and we remand this case to the trial court for a new trial on liability and damages.