**Opinion filed November 29, 2012**



## In The

# Eleventh Court of Appeals

_____

### No. 11-10-00376-CV

_____

### SUPERIOR BROADCAST PRODUCTS, Appellant

### V.

### DOUD MEDIA GROUP, L.L.C., Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 23479B**

### O P I N I O N

Appellee, Doud Media Group, L.L.C., purchased a radio transmitter from appellant, Superior Broadcast Products. Doud Media experienced problems with the transmitter and, later, filed this suit against Superior. Doud Media alleged, among other things, that the transmitter was defective and that Superior breached an express warranty requiring it to repair or to replace the transmitter. The jury found in favor of Doud Media on its breach of warranty claim and awarded it damages. The trial court entered a final judgment in accordance with the jury's verdict. Because we conclude that the evidence was legally insufficient to support the amount of damages awarded by the jury to Doud Media, we reverse and remand for a new trial on liability and damages.

Doud Media owns and operates two radio stations in Abilene, Texas. Doud Media purchased the subject radio transmitter from Superior in 2003. Richard Doud, the managing member of Doud Media, acted on behalf of Doud Media in connection with its purchase of the radio transmitter from Superior. James Joynt owned Superior and acted on its behalf in connection with the transaction. Elenos Broadcast Equipment Company was the manufacturer of the transmitter. Superior installed the transmitter on Doud Media's premises on April 18 and 19, 2003. Richard Doud and James Thompson, who was an engineer and an independent contractor for Doud Media, were present during the installation. Joynt and Steven Benzer, who was an independent contractor for Superior, were also present during the installation.

On April 18, 2005, Doud Media filed this suit against Superior and Elenos. At that time, Doud Media was not represented by a licensed attorney. Instead, Richard Doud signed the original petition in his capacity as managing member. In its petition, Doud Media alleged that the transmitter was defective. It alleged claims for fraud, and it also alleged that the defendants violated the Deceptive Trade Practices-Consumer Protection Act[1] (DTPA) in various respects, including the breach of implied warranties.

Doud Media did not serve its original petition on Superior until March 8, 2007. On March 19, 2007, Superior, represented by counsel, filed a "Motion to Dismiss and for Attorneys Fees as Sanctions." Superior moved the trial court to dismiss the case on the ground that Richard Doud's representation of Doud Media violated the requirement that a corporation, such as Doud Media, be represented by a licensed attorney. Superior requested the trial court to award it $1,000 in attorney's fees as sanctions against Doud Media.

Doud Media obtained licensed counsel to represent it and thereafter, on March 26, 2007, filed its first amended original petition. In that petition, it continued to assert its DTPA and fraud claims and also added claims for breach of oral and written agreements. Doud Media alleged that the transmitter was defective, that it requested the defendants to remedy the defect, and that the defendants "refused to honor the one-year express warranty provided with the transmitter and repair or replace the transmitter in violation of the agreement entered into and in violation of various implied warranties." In the certificate of service to the amended petition, Doud Media's counsel of record certified that the amended petition had been served by certified mail, return receipt requested, on Superior's counsel of record.

---

[1]TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011 & Supp. 2012).

On May 17, 2007, Superior filed a counterclaim in which it alleged that Doud Media failed to pay it part of the purchase price for the transmitter. Specifically, Superior alleged that Doud Media paid $20,500 toward the purchase of the transmitter but failed and refused to pay the remaining balance due of $20,500. Superior sought to recover the alleged amount due and also sought to recover its attorney's fees. Further, on May 17, 2007, Superior filed an answer that included affirmative defenses. Superior asserted as an affirmative defense that the applicable two-year statute of limitations barred Doud Media's DTPA claims. To support its limitations defense, Superior alleged (1) that, because Richard Doud was not a licensed attorney, Doud Media's original petition "was fundamentally defective and did not properly invoke the jurisdiction of the court"; (2) that Doud Media did not file a valid petition until it filed its amended petition in March 2007; and (3) that, therefore, Doud Media did not file a valid petition within the applicable two-year limitations period. As another affirmative defense, Superior asserted that the doctrine of laches barred Doud Media's claims.

On June 2, 2008, Doud Media filed a second amended petition; it continued to allege claims for breach of oral and written agreements, DTPA violations, and fraud. Additionally, in its second amended petition, Doud Media alleged that "[t]he Defendants have continued to refuse to honor their express warranties."

On September 3, 2009, Superior filed a traditional motion for summary judgment. In the motion, Superior argued that all of Doud Media's claims were barred by limitations. Superior stated in the motion that "[t]his cause was filed on April 18, 2005, based on events that allegedly occurred on April 18, 2003." Superior asserted that Doud Media's original petition, which was filed on April 18, 2005, was "illegal and void as a matter of law" because Richard Doud was not a licensed attorney. Superior also contended that the service of the original petition on it was likewise "void." Because the original petition was "void," Superior contended that Doud Media failed to file this suit within the two-year limitations period that is applicable to DTPA claims. *See* TEX. BUS. & COM. CODE ANN. § 17.565 (West 2011).

Doud Media added its contract claims in its first amended original petition, which was filed on March 26, 2007. Superior stated in its motion for summary judgment that "[t]he record is clear that the breach of contract cause of action was not filed until March 28, 2007; three years, 11 months and 10 days after the alleged incident." Superior asserted that, with respect to Doud Media's first amended petition, "[n]o citation was issued and no service was attempted on

[Superior]." Superior contended that Doud Media failed to use due diligence in serving it with the first amended petition and that, therefore, Doud Media's contract and fraud claims were barred by the applicable four-year statutes of limitations.

The trial court held a hearing on Superior's motion for summary judgment. Following the hearing, the trial court granted Superior's motion for summary judgment as to Doud Media's DTPA claims and entered a partial summary judgment dismissing the DTPA claims with prejudice. The trial court denied Superior's motion for summary judgment as to Doud Media's breach of contract and fraud claims.

Doud Media settled its claims against Elenos for $17,250 and nonsuited those claims; the trial court entered an order dismissing those claims from the suit.

The case proceeded to a jury trial. The jury found in favor of Doud Media on its breach of warranty and fraud claims, awarding damages to Doud Media in the amount of $231,000 on its breach of warranty claim and in the amount of $500 on its fraud claim. In response to a proportionate liability question, the jury found that Superior caused 60% of Doud Media's damages, that Elenos caused 30% of Doud Media's damages, and that Doud Media caused 10% of its damages.

In response to other questions, the jury found that Doud Media agreed to pay Superior $37,500 for the radio transmitter and that Doud Media paid $16,000 to Superior for the transmitter. The jury awarded Superior $6,000 in attorney's fees.

Doud Media elected to recover the damages awarded by the jury on its breach of warranty claim. The trial court entered a judgment in accordance with the jury's verdict. In arriving at an award for damages, the trial court reduced the $231,000 in damages found by the jury on Doud Media's breach of warranty claim by 10%, which was Doud Media's percentage of responsibility for its damages as found by the jury. The trial court also gave Superior a credit in the amount of $17,250 for Doud Media's settlement with Elenos, a credit of $21,500 for the amount that the jury found Doud Media owed Superior for the transmitter, and a credit for $6,000 for Superior's attorney's fees. The trial court ordered in its judgment that Doud Media recover from Superior the amount of $163,150 in damages.

Superior presents four issues for review. In its first issue, Superior contends that all of Doud Media's claims were barred by limitations and laches and that, therefore, the trial court erred when it denied its motion for summary judgment. In its second issue, Superior contends

4

that the trial court erred when it submitted questions to the jury on Doud Media's breach of warranty claims. In its third issue, Superior contends that the trial court erred when it submitted a question to the jury that allowed it to award consequential damages. In its fourth issue, Superior challenges the legal sufficiency of the evidence supporting the damages awarded by the jury to Doud Media.

Superior challenges the trial court's denial of its motion for summary judgment on Doud Media's contract and fraud claims. Generally, appellate courts do not have jurisdiction to review the denial of a motion for summary judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Hines v. Comm'n for Lawyer Discipline*, 28 S.W.3d 697, 700 (Tex. App.—Corpus Christi 2000, no pet.); *United Parcel Serv., Inc. v. Cengis Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). When the trial court's denial of a motion for summary judgment is followed by a trial on the merits, the order denying the summary judgment cannot be reviewed on appeal. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *United Parcel Serv.*, 25 S.W.3d at 916; *Carr v. Weiss*, 984 S.W.2d 753, 760 (Tex. App.—Amarillo 1999, pet. denied). The issues in this case were tried on the merits. We have no jurisdiction to review the trial court's denial of Superior's motion for summary judgment. Therefore, we do not address Superior's first appellate issue.

We note that Superior waived appellate review of its limitations and laches issues. Limitations and laches are affirmative defenses. TEX. R. CIV. P. 94. A party asserting an affirmative defense bears the burden to plead, prove, and secure findings on the defense. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 325 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In this case, Superior did not present evidence that supported its limitations and laches defenses at trial. The record does not show that Superior requested jury questions or instructions on its limitations and laches defenses. The failure to request a jury instruction on an affirmative defense results in waiver of that ground by the party relying on it unless the issue was conclusively established. *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Accordingly, Superior waived appellate review of its affirmative defenses of limitations and laches.

Even if Superior had preserved error on its affirmative defenses, the evidence would support a finding that Doud Media filed suit on its breach of warranty and fraud claims, and

served Superior with its suit on those claims, within the applicable limitations periods. The statute of limitations period for a breach of warranty claim is four years. TEX. BUS. & COM. CODE ANN. § 2.725(a), (b) (West 2009); *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 92–93 (Tex. 2004). Likewise, the statute of limitations period for a fraud claim is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2002).

For the purpose of our analysis, we assume without deciding that the applicable four-year statutes of limitations began to run on the date that Superior completed the installation of the transmitter (April 19, 2003), instead of on a later date. *See* Section 2.725(b) ("[W]here a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."). Doud Media filed its first amended petition that contained the breach of contractual warranty and fraud claims on March 26, 2007, which was within the four-year limitations period.

The record shows that Superior made a general appearance in this case before Doud Media filed its first amended petition. A party enters a general appearance in a case when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court. *Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004); *Klingenschmitt v. Weinstein*, 342 S.W.3d 131, 134 (Tex. App.—Dallas 2011, no pet.). In this case, on March 19, 2007, Superior filed a motion to dismiss and for attorney's fees as sanctions. In its motion, Superior sought affirmative action from the trial court in the form of a dismissal of the suit and in the form of an award of sanctions against Doud Media. By seeking such affirmative action, Superior made a general appearance in the case. *Klingenschmitt*, 342 S.W.3d at 134; *In re G.L.A.*, 195 S.W.3d 787, 792 (Tex. App.—Beaumont 2006, pet. denied).

An appearance in a case has "the same force and effect as if the citation had been duly issued and served as provided by law." TEX. R. CIV P. 120; *In re A.L.H.C.*, 49 S.W.3d 911, 916 (Tex. App.—Dallas 2001, pet. denied). Generally, service of citation is required only upon the filing of an original petition or lawsuit and is not required when amended or supplemental pleadings are filed. *See* TEX. R. CIV. P. 21, 99. Rule 21a of the Rules of Civil Procedure applies to all pleadings required to be served under Rule 21 other than the original petition and except as otherwise expressly provided in the rules. *See* TEX. R. CIV. P. 21a; *In re E.A.*, 287 S.W.3d 1, 4

(Tex. 2009). Once Superior made a general appearance, Doud Media could properly serve its amended petition by complying with the filing and service requirements of Rule 21a, which provides that such pleadings may be served by delivering a copy to the other party's attorney of record. In the certificate of service to the first amended petition, Doud Media's counsel certified that it had served Superior's counsel of record by certified mail. A certificate of service is prima facie evidence of the fact of service. *In re E.A.*, 287 S.W.3d at 5. The record supports the conclusion that Doud Media filed and properly served its first amended petition within the four-year limitations period for breach of warranty and fraud claims.

To invoke the equitable doctrine of laches, the moving party ordinarily must show (1) an unreasonable delay by the opposing party in asserting its rights and (2) a good faith and detrimental change in position by the moving party because of the delay. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989). "Generally in the absence of some element of estoppel or such extraordinary circumstances as would render inequitable the enforcement of petitioners' right after a delay, laches will not bar a suit short of the period set forth in the limitation statute." *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (quoting *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 840 (Tex. 1968)). Laches should not bar an action on which the applicable statute of limitations has not run unless to allow the action "would work a grave injustice" on the party asserting the laches defense. *Culver v. Pickens*, 176 S.W.2d 167, 170 (Tex. 1943); *Brewer v. Nationsbank of Texas, N.A.*, 28 S.W.3d 801, 804 (Tex. App.—Corpus Christi 2000, no pet.).

Superior did not present evidence supporting its laches defense. But, even if it had preserved error on the issue, laches would not bar Doud Media's suit.

The trial court submitted questions to the jury as to whether a warranty existed and, if so, whether Superior breached the warranty. In Question No. 3 of the charge, the trial court asked the jury: "Did [Superior] provide a warranty for the radio transmitter which was purchased by [Doud Media]?" The jury answered Question No. 3: "Yes." In Question No. 4, the trial court asked the jury: "Was the failure, if any, of [Superior] to comply with a warranty, if any, a producing cause of damages to [Doud Media]?" The trial court included in Question No. 4 definitions of "producing cause" and "failure to comply with a warranty." The jury answered Question No. 4: "Yes."

7

In its second issue, Superior argues that the trial court erred when it submitted warranty questions to the jury. First, Superior argues that the trial court dismissed Doud Media's breach of warranty claims when it dismissed the DTPA claims and that, because the warranty claims were dismissed, the trial court erred when it submitted them to the jury. Second, Superior argues that the trial court erred when it submitted warranty questions to the jury because there was no evidence as to the specific nature of the alleged warranty.

Rule 278 of the Texas Rules of Civil Procedure requires that the trial court submit jury questions that are supported by the written pleadings and the evidence. TEX. R. CIV. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002); *Schrock v. Sisco*, 229 S.W.3d 392, 393 (Tex. App.—Eastland 2007, no pet.). We review a challenge to a trial court's jury charge under an abuse of discretion standard. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Schrock*, 229 S.W.3d at 393.

Superior's first argument is based on the premise that the trial court dismissed Doud Media's breach of warranty claims when it dismissed its DTPA claims. Under Section 17.50(a)(2) of the DTPA, a consumer may maintain an action when the breach of an express or implied warranty constitutes a producing cause of economic or mental anguish damages. TEX. BUS. & COM. CODE ANN. § 17.50(a)(2) (West 2011). Doud Media alleged that Superior violated the DTPA when it breached the implied warranty of fitness for a particular purpose and the implied warranty of merchantability with respect to the transmitter. However, Doud Media also alleged, independent of its DTPA claims, that Superior breached express warranties relating to the transmitter. The DTPA does not provide the sole remedy for breach of warranty claims. *See PPG Indus.*, 146 S.W.3d at 89. Rather, it provides an additional remedy that overlaps with common-law causes of action for breach of warranty. *Id.* In this case, Doud Media could assert its breach of warranty claims as common-law claims, DTPA claims, or both. *Id.*

In its partial summary judgment, the trial court dismissed Doud Media's DTPA claims, and we express no opinion on the merits of those claims. Based on the summary judgment, Doud Media could not recover under the DTPA based on the breach of any warranty. The partial summary judgment did not dispose of Doud Media's non-DTPA breach of warranty claims. The trial court did not dismiss Doud Media's breach of express warranty claims. Because the trial

8

court did not dismiss those claims, Superior's first argument is based on a false premise and must fail.

Superior contends that Doud Media did not present any evidence as to the specific nature of the alleged warranty. A trial court may refuse to submit a jury question only if no evidence exists to warrant its submission. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *Sewing v. Bowman*, 371 S.W.3d 321, 339 (Tex. App.—Houston [1st Dist.] 2012, pet. filed). Conflicting evidence presents a fact question for the jury to decide. *Brown v. Goldstein*, 685 S.W.2d 640, 641–42 (Tex. 1985); *Sewing*, 371 S.W.3d at 339.

Doud Media presented testimony and documentary evidence relating to the specific nature of express warranties for the transmitter. Doud Media did not sign a written contract for the purchase of the transmitter. Superior provided a "Sales Quotation" to Doud Media before Doud Media purchased the transmitter. In the "Sales Quotation," Superior stated that "[a]ll Superior Transmitters have a one year warranty against defects in material and workmanship." Richard Doud testified that Joynt told him that Superior offered a one-year warranty; that Elenos offered a two-year warranty; that Superior would honor Elenos's two-year warranty; and that the one- and two-year warranties covered parts that failed on the transmitter, replacement of those parts, and service. Elenos provided a document entitled "General Terms of Sale" to Superior in connection with Elenos's sale of equipment to Superior. A "Warranty" section in the document provided, in part, as follows:

> The equipment supplied by Elenos srl is covered by 24 months warranty; the warranty period starts on the date of purchase and the coverage extends both to the original purchaser and to any subsequent buyers. The warranty covers all faults caused by defective components.

Thus, Doud Media presented evidence that one-year and two-year express warranties existed with respect to the transmitter.

In November 2005, Benzer sent an e-mail to a representative of Elenos. In the e-mail, Benzer stated that he had contacted Richard Doud regarding "the repair of his failed Elenos T31KW radio broadcast transmitter." Benzer also stated that, based on a lengthy discussion that he had had with Thompson, he was of the opinion "that the broadcast transmitter failure [that Thompson] has described is the result of an incorrect assembly when the transmitter was initially built." Benzer also stated that Thompson had observed that "many critical fasteners in the power amplifier cavity . . . had not been properly tightened." Benzer further stated that the improper

assembly had led to "a catastrophic failure of certain of the PA cavity components, including the thermionic vacuum tube socket contacts." Benzer concluded that, "[i]f this [was] true, [he was] also of the opinion that the repair of this transmitter should be covered under the terms and conditions of the original warranty." The evidence was undisputed that Superior did not repair or replace the transmitter after Benzer sent this e-mail to the Elenos representative.

Joynt testified that Superior provided Doud Media a one-year warranty against defects in material and workmanship, which Joynt said was a parts warranty, on the transmitter. Joynt said that the warranty was not for service. He said that Superior never offered Doud Media a two-year warranty from Elenos. Joynt initially said that Elenos did not offer Superior a two-year warranty when it purchased the transmitter from Elenos. Joynt acknowledged in later testimony that Elenos offered Superior a two-year parts warranty. Joynt then said that a customer, such as Doud Media, would have a two-year parts warranty from Elenos. He said that "[t]he first year the parts warranty would come through Superior" and that "[t]he second year the parts warranty would come directly through Elenos."

In summary, Richard Doud testified that one-year and two-year warranties existed on the transmitter and that Superior agreed to honor the warranty the second year. Richard Doud said that the warranties covered failed parts, replacement of those parts, and service. The documentary evidence supported Doud Media's claims that one- and two-year express warranties existed. Joynt's testimony about the nature of the warranties conflicted with Richard Doud's testimony. The conflicting evidence presented fact issues for the jury to decide. *Brown*, 685 S.W.2d at 641–42; *Sewing*, 371 S.W.3d at 339. Therefore, the trial court was required to submit the warranty questions to the jury.

The trial court did not abuse its discretion when it submitted Question Nos. 3 and 4 to the jury. Superior's second issue is overruled.

Superior argues in its third issue that the trial court erred when it submitted a question on consequential damages to the jury. In Question No. 5 of the charge, the trial court asked the jury:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Doud Media] for its damages, if any, that resulted from such failure to comply with the warranty?

> Consider the following elements of damages, if any, and none other.

10

A. Loss of use;

B. Lost profits, in the past;

C. Cost of Replacement of the subject transmitter;

D. Cost of the unsuccessful repairs and replacement transistors;

E. Reasonable and necessary engineering or consulting fees which were incurred in the unsuccessful effort to repair the defective transmitters; and

F. Reasonable and necessary attorney's fees.

Do not add any amount for interest on the damages, if any.

Answer in dollars and cents, if any.

Answer: _____

In its pleadings, Doud Media sought recovery of damages for the items listed in A through F of Question No. 5. In response to Question No. 5, the jury awarded damages to Doud Media in the amount of $231,000.

Consequential damages are those damages that result naturally, but not necessarily, from a party's breach of contract. *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). Consequential damages are not recoverable unless the parties contemplated, at the time of contract formation, that such damages would be a probable result of the breach. *Basic Capital*, 348 S.W.3d at 901; *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981). Thus, to be recoverable, consequential damages must be foreseeable and directly traceable to the breach and result from it. *Basic Capital*, 348 S.W.3d at 901; *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998).

Superior states in its brief that "[t]he inclusion of the Jury Charge Question No. 5 on consequential damages for the breach of the alleged warranty without a foreseeability requirement was error." Based on this statement, Superior may be arguing that the trial court erred by failing to instruct the jury that it could only award damages that were a foreseeable consequence of a breach of warranty. Or, Superior may be arguing that the trial court erred

11

when it submitted Question No. 5 to the jury because there was no evidence that the damages were foreseeable.

Superior did not request the trial court to instruct the jury to consider damages that were a natural, probable, and foreseeable consequence of the breach of warranty. *See Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied) (jury instructed to consider lost profits that were the natural, probable, and foreseeable consequence of party's failure to comply with agreement). Rule 278 of the Rules of Civil Procedure provides that the "[f]ailure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." To preserve error, the complaining party must tender a written request to the trial court for submission of the definition or instruction, which is in substantially correct wording, and obtain a ruling on the request. *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 27 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Because Superior did not request an instruction as to the foreseeability of damages, it did not preserve a complaint for appellate review that the trial court erred by failing to include such an instruction in the jury charge.

Doud Media sought to recover the following "elements of damages": loss of use damages; past lost profits; the cost of replacing the subject transmitter; the costs of unsuccessful repairs of the transmitter and of replacement transmitters; reasonable and necessary engineering and consulting fees incurred in connection with efforts to repair the defective transmitter; and reasonable and necessary attorney's fees.

The evidence supported the trial court's decision to submit a consequential damages question to the jury. Joynt acknowledged during his testimony that a radio station owner's ability to earn money is directly connected to the station's abilities to broadcast and to advertise. Joynt testified that the owner of a radio station is "losing money" if the station is off the air. This testimony demonstrated that it was foreseeable to Superior that Doud Media would lose money if a defective transmitter prevented its station from being on the air and that it would continue to lose money until the defective transmitter was repaired or replaced. Based on the evidence, we conclude that lost profits to Doud Media constituted a foreseeable consequence of a breach of warranty by Superior. It was also foreseeable that Doud Media would spend money to repair or to replace a defective transmitter if Superior breached a warranty to repair or to replace it.

12

Therefore, the costs incurred by Doud Media in attempting to repair the transmitter and in replacing the transmitter were also foreseeable consequences of a breach of warranty by Superior.

Because the types of damages Doud Media sought to recover were natural, probable, and foreseeable consequences of a breach of warranty by Superior, the trial court did not err when it submitted a consequential damages question to the jury. Superior's third issue is overruled.

In its fourth issue, Superior argues that the evidence was legally insufficient to support the jury's damages award of $231,000. Specifically, Superior contends that there was no evidence to support an award for lost profits damages. When we analyze a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must review the evidence in the light most favorable to the challenged finding, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient evidence" Points of Error*, 38 TEXAS L. REV. 361, 362–63 (1960)); *Pendergraft v. Carrillo*, 273 S.W.3d 362, 366 (Tex. App.—Eastland 2008, pet. denied).

Lost profits are damages for the loss of net income to a business and, broadly speaking, reflect income from lost business activity, less expenses that would have been attributable to that activity. *Examination Mgmt. Servs., Inc. v. Kersh Risk Mgmt., Inc.*, 367 S.W.3d 835, 840 (Tex. App.—Dallas 2012, no pet.); *Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). The calculation of lost profits must be based on net profits, not gross revenues. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992); *Examination Mgmt. Servs.*, 367 S.W.3d at 840.

Recovery for lost profits does not require that the loss be susceptible of exact calculation. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) (quoting *Holt Atherton*, 835 S.W.2d at 84). However, the injured party must do more than show that it suffered

some lost profits. *Id.* The amount of the loss must be shown by competent evidence with reasonable certainty. *Id.* What constitutes reasonably certain evidence is a fact-intensive determination. *Id.* As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Id.*

Doud Media offered limited testimony from Richard Doud in an attempt to support its lost profits allegations. During direct examination, Richard Doud testified as follows:

Q. Okay. Let's talk about how this radio transmitter and the repeated serial failures of the radio transmitter has affected your business.

A. Okay.

Q. And let's talk about the period from April 2003 to the purchase of the new unit, and that was in 2005 or 2006?

A. Correct, one of the two. I don't --

Q. You --

A. I don't remember off the top of my head which year it was.

Q. Let's use 2005.

A. Okay.

Q. As your E-mails and memos have demonstrated, you're having power outages during sweeps periods?

A. Not power outages, transmitter failures.

Q. And if you're having a transmitter failure and those advertisers are unhappy, they're not going to advertise with you?

A. Correct.

Q. Do you have knowledge of, again, during that period the amount of money which you lost, the amount of revenue which you lost?

A. Based on the ratings-to-revenue conversion, I can certainly give a rough estimate.

Q. What is it?

14

At this point, Superior's counsel objected to further damages testimony from Richard Doud. The trial court overruled the objection, and Richard Doud's testimony continued as follows:

Q. Rich, I think we were asking you a few questions about estimations of your damages?

A. Yes.

Q. And we've gone through repairs; we've gone through replacement; we have that information. But what I'm trying to figure out now is during this three-year period, how did it affect your business, and if you can quantify that and put a number to it, let me know.

A. I can, and it was significant.

Q. Let me know. What's the figure or the estimate?

A. $1,032,000.

Q. And tell this jury where that comes from.

A. That comes from a ratings-to-revenue conversion. In this market usually one rating share is worth $100,000 worth of revenue. Our ratings declined based on the amount of time that the transmitter was either off the air or at low power. So if we started out, which we did when we installed the transmitter, at an 8.5 share, by the time we had -- we actually changed frequency in order to stop the bleeding, in order to stop the station from going off the air, moved the station from 96.1 to 95.1 in order to save the listeners that we had left. So when you're talking about going from an 8.5 to a four, you're looking within the course of a couple of years losing $400,000 worth of revenue -- $450,000 worth of revenue within that time frame. So that's where that information comes from.

Richard Doud's testimony was legally insufficient to establish an amount of lost profits with reasonable certainty. He testified that he could give a "rough estimate" of the amount of revenue that was lost. Lost revenue is not the correct measure of damages. Rather, lost net profits is the correct measure of damages. *Holt Atherton*, 835 S.W.2d at 83 n.1; *Examination Mgmt. Servs.*, 367 S.W.3d at 840. Richard Doud provided no testimony as to Doud Media's lost profits. His "rough estimate" of $1,032,000 in lost revenues was based on a loss of ratings share from 8.5 to 4. He provided no testimony as to when the ratings share began to decrease and the rate that it decreased. Although he did not know when Doud Media replaced the transmitter, he used the year 2005 to estimate lost revenues. He did not specify the month in 2005 that he used

to make his calculation.  Even if lost revenue was the correct measure of damages, Richard Doud did not support his "rough estimate" of lost revenue with objective facts, figures, or data; therefore, Doud Media failed to establish its lost revenues by competent evidence with reasonable certainty.  The evidence was legally insufficient to support an award of lost profits damages.  *See Holt Atherton*, 835 S.W.2d at 84.

Doud Media presented some evidence supporting awards on some elements of damages. For example, Richard Doud estimated that Doud Media spent $25,000 in connection with attempts to repair the transmitter that it purchased from Superior.  He also testified that the cost of the replacement transmitter was about $25,000.  The evidence supported an award of some damages on three of the elements of damages (C, D, and E) that the jury was instructed to consider.

The jury's damages award of $231,000 to Doud Media greatly exceeded the costs incurred by Doud Media to repair and to replace the Superior transmitter.  The jury's award necessarily included a substantial amount of money for lost profits damages.  Because the evidence was legally insufficient to support an award for lost profits damages, we sustain Superior's fourth issue.

Ordinarily, when there is legally insufficient evidence to support a finding, we reverse and render.  *Holt Atherton*, 835 S.W.2d at 86; *Pendergraft*, 273 S.W.3d at 368.  However, in this case, Question No. 5 of the charge did not require the jury to segregate the damages awarded for the various elements of damages.  Based on the record, we cannot determine how much money the jury awarded Doud Media for lost profits damages or how much money, if any, the jury awarded Doud Media for any of the other elements of damages.  Therefore, we must remand the case for a new trial on all damages issues.  TEX. R. APP. P. 43.3; *Pendergraft*, 273 S.W.3d at 368; *Tex. Indus., Inc. v. Vaughan*, 919 S.W.2d 798, 804 (Tex. App.—Houston [14th Dist.] 1996, writ denied).  Because we are remanding for a new trial on claims involving unliquidated damages, we also remand for a new trial on liability.  TEX. R. APP. P. 44.1(b); *Pendergraft*, 273 S.W.3d at 368; *see Lucas v. Clark*, 347 S.W.3d 800, 803 (Tex. App.—Austin 2011, pet. denied) (lost profits are unliquidated damages); *First Nat'l Bank of Irving v. Shockley*, 663 S.W.2d 685, 689 (Tex. App.—Corpus Christi 1983, no writ) (unliquidated damages include, among other things, lost profits and consequential damages).

*This Court's Ruling*

The judgment of the trial court is reversed, and this case is remanded to the trial court for a new trial on liability and damages.

JIM R. WRIGHT

CHIEF JUSTICE

November 29, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Hill.[2]

---

[2]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.