Opinion filed February 5, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00102-CV

_____

**PEGGY JOYCE RUTH, Appellant**
**V.**
**ARMA LEE CROW, JAMES ALBERT CROW, SANDRA FORD,**
**AND THE RUBY AND ANNIE SMITH FAMILY PARTNERSHIP,**
**Appellees**

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV10-02-049A**

### M E M O R A N D U M   O P I N I O N

When Peggy Joyce Ruth asked the trial court to compel arbitration in this case, the trial court denied her request. This is an appeal from that denial. We affirm.

James Albert Crow, Sandra Ford, and Peggy Joyce Ruth are siblings; Arma Lee Crow is their mother. All four are partners in the Ruby and Annie Smith Family Partnership. The rather lengthy history of this litigation began in February 2010 when Arma, James Crow, and Sandra sued Peggy in Brown County for partition of real property located there.

James A. Ruth, Peggy's husband, intervened in the lawsuit. In his intervention, James Ruth alleged that James Crow had previously persuaded Peggy to enter into a family partnership and to convey her interest in certain San Saba County property to that partnership. James Ruth claimed that, in order to convince Peggy to enter into the family partnership, James Crow told her that the three siblings would own the Brown County property and that James Ruth would have the right to ranch the property during his lifetime. James and Peggy Ruth's home is located on the Brown County property. James Ruth alleged that, in reliance on this agreement, he and Peggy "expended significant time and/or funds for the improvement of the [Brown County] Property, and in their cattle operation." He asserted claims for breach of the partnership agreement and unjust enrichment and James Ruth also sought to expel James Crow from the partnership. In Peggy's original answer, she asserted a general denial, and she also "incorporate[d] each and every factual allegation and claim brought in James A. Ruth's Petition in Intervention."

Arma, James Crow, and Sandra sought an order for mediation. Peggy opposed mediation, but the trial court ordered the parties to mediate. Indeed, the parties reached a settlement and executed a Mediated Settlement Agreement (MSA). The trial court later granted Arma, James Crow, and Sandra's motion to enforce the MSA. Peggy filed a motion for new trial but did not get one. Thereafter, she appealed the trial court's ruling to this court. We dismissed the appeal for lack of jurisdiction. *See Ruth v. Crow*, No. 11-12-00087-CV, 2013 WL 2302038, at *1 (Tex. App.—Eastland May 23, 2013, no pet.) (mem. op.).

There are two additional lawsuits that involve the subject matter of this lawsuit. William W. Ruth filed both of those actions. William is not only an attorney: he is James Ruth and Peggy's son and Arma's grandson. William filed a lawsuit in San Saba County against the Ruby and Annie Smith Family Partnership.

2

The trial court there later dismissed that case on its own motion. William filed another lawsuit, this one in Brown County, in his individual capacity and in the interest of Arma Lee Crow and the Ruby and Annie Smith Family Partnership. He filed the suit against James Crow and Sandra. William referenced the Brown County property and the San Saba County property, and he also made claims relative to the family partnership. He asserted claims for breach of fiduciary duties and fraud and also sought to expel James Crow from the partnership.

James Crow and Sandra asked the trial court to consolidate the two remaining lawsuits. In September 2013, the trial court granted the request and consolidated the two lawsuits. The trial court also entered a scheduling order, and it preferentially set the consolidated cases for trial on its jury docket for April 21, 2014. After the trial court set the case for jury trial, William, Peggy, and James Ruth filed a "Joint Motion to Compel Discovery and Request for Sanction" in which they sought $10,000 in sanctions from opposing attorneys because of discovery delay; they sought sanctions on at least two other occasions. William also moved yet again to compel discovery.

In December 2013, the Ruby and Annie Smith Family Partnership filed a plea in intervention in this suit in which it alleged that James Ruth, Peggy, and William had conspired to file "a secret lawsuit" against the Partnership in San Saba County. The Partnership alleged that the Ruths planned to have Peggy served on behalf of the Partnership rather than the managing partner, Arma, and that Peggy "would accept service, keep the lawsuit a secret from her partners[,] and cooperate with her son to allow her son William Ruth to obtain a money judgment against the partnership." The Partnership further alleged, in its intervention in this case, that Peggy misrepresented to the trial court that, because no managing partner had been designated, she could act on behalf of the Partnership. According to the allegations, Charles King, Peggy's attorney in the Brown County litigation, was

3

hired in the San Saba County case "to give the appearance of a legitimate defense." The Partnership also alleged that William obtained a "fraudulent 'Agreed Order'" in the San Saba County case in which William was awarded $265,000 to be paid by the Partnership. Arma, James Crow, and Sandra filed a Plea in Intervention in the San Saba County lawsuit, moved for a transfer of venue, and filed a "Motion Requesting Charles King to Show Authority to Act on Behalf of the Family Partnership." Without ruling on these motions, the San Saba County trial court eventually dismissed the suit for failure to prosecute. In its plea in intervention in the instant suit, the Partnership sought a declaratory judgment that, among other things, the agreed order was not a final judgment, that Peggy did not have authority to act on behalf of the Partnership, and that Peggy breached her fiduciary duty.

On March 7, 2014, James Beam substituted as counsel for Peggy. On March 17, 2014, for the first time since the litigation began, Peggy filed a motion to abate and arbitrate, as provided for in the partnership agreement. At the hearing on the motion, Beam argued that there was a presumption in favor of arbitration, and he offered the partnership agreement into evidence. However, there was a page missing from the exhibit. The Partnership's attorney agreed to not object to the admission of the incomplete partnership agreement if Beam would concede that, since his substitution as counsel three weeks before the hearing on the motion to arbitrate, there had been five depositions taken in this case, including one in El Paso. Beam agreed.

The Partnership's position at the hearing was that Peggy had waived her right to arbitration. The Partnership recognized the presumption favoring arbitration but argued that the reason for the presumption was judicial economy and that, because litigation had been ongoing for four years, "the spirit and purpose behind arbitration in this case was lost long ago." The Partnership directed the court to the "numerous motions" and "lawsuits filed by both sides" seeking

4

sanctions and other affirmative relief. The trial court found that Peggy had waived her right to arbitration by substantially invoking the judicial process to the detriment of opposing parties.

A party waives her right to arbitration if she (1) substantially invokes the judicial process (2) to the detriment or prejudice of the other party. *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008). In her sole issue on appeal, Peggy challenges the trial court's ruling and attacks both elements of waiver.

When the trial court's findings involve questions of law and fact, we review the trial court's ruling for an abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). To apply this standard, we defer to the findings of fact that are supported by the evidence and review the legal determination de novo. *Cull*, 258 S.W.3d at 598. A trial court abuses its discretion if "it does not properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record." *City of San Antonio v. Headwaters Coal., Inc.*, 381 S.W.3d 543, 550 (Tex. App.—San Antonio 2012, pet. denied).

A party waives the right to arbitration "by substantially invoking the judicial process to the other party's detriment or prejudice." *Cull*, 258 S.W.3d at 589–90. Waiver is determined by the totality of the circumstances and decided on a case-by-case basis, and there is a strong presumption against waiver. *Id.* at 590. "In cases of waiver by litigation conduct, the precise question is not so much when waiver occurs as when a party can no longer take it back." *Id.* at 595.

Peggy's first contention is that "the two months between Appellees' causes of action that invoked the arbitration provision and [her] notice of intent to invoke the dispute resolution provision" in the partnership agreement "does not rise to the level of 'substantially invoking the litigation process.'" We construe this as a complaint that it was improper for the trial court to consider her conduct

5

throughout the four years of litigation, beginning in 2010, because she had no right to demand arbitration until either December 17, 2013, when the opposing parties asserted claims involving breach of the partnership agreement, or December 30, 2013, when the Partnership intervened in the suit. According to Appellees, "[t]his argument not only ignores the overall circumstances and history of this ongoing family fight, it specifically ignores [Peggy's] own claims." Appellees argue that Peggy could have asserted her right to arbitration any time after she filed her original answer on March 23, 2010, in which Peggy "asserted a breach of contract claim involving the formation of the partnership, and also sought the expulsion of James Crow, from the partnership."

We note that Peggy does not challenge the trial court's factual findings but, instead contends that her conduct, when assessed during a certain period of time, "[did] not rise to the level of 'substantially invoking the litigation process.'" Thus, we must determine whether the trial court considered Peggy's actions during the proper period of time.

The partnership agreement provides that the partners are to use the dispute resolution procedures "to resolve any dispute, contest or claim which may result as to issues of valuation, ownership, the construction and enforcement of this agreement, and as to any other matter which may pertain to or relate to the agreement." According to the dispute resolution provisions contained in the agreement, the partners are to first attempt to negotiate a settlement, and if unsuccessful, then the dispute is to be submitted to mediation. If the partners cannot reach a settlement in mediation, the dispute is then to be submitted to "mandatory and binding arbitration of the claim."

In her original answer, Peggy simply asserted a general denial and "incorporate[d] each and every factual allegation and claim brought in James A. Ruth's Petition in Intervention." James Ruth had alleged that James Crow

6

persuaded Peggy to form a family partnership and to convey her interest in the San Saba County property to the partnership by promising that the Brown County property would also be jointly owned by the three siblings and that James Ruth would have a lifetime right to ranch the Brown County property. Peggy also incorporated her husband's claims for breach of contract for not honoring the agreement, for unjust enrichment for persuading Peggy to enter into the family partnership and then failing to provide her with the consideration promised, and for removal of James Crow as a partner.

Based on the undisputed facts, we must conclude that, to assess whether Peggy substantially invoked the judicial process in this suit, it was proper for the trial court to consider Peggy's conduct from the time that she answered and asserted causes of action relating to the formation of the partnership: breach of contract, unjust enrichment, and removal of a partner. Accordingly, Peggy's contention that the trial court should have considered only her conduct during the two months prior to her arbitration notice is overruled.

We next address Peggy's complaint that "there is zero evidence in the record showing the arbitration is prejudicial to Appellees." As noted above, we review the trial court's ruling for an abuse of discretion. *Walker*, 827 S.W.2d at 839–40. We will sustain a "no-evidence" challenge "when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact." *Superior Broad. Prods. v. Doud Media Grp., L.L.C.*, 392 S.W.3d 198, 210 (Tex. App.—Eastland 2012, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)).

"Parties that 'conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial' waive any contractual right to arbitration."

7

*In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 693 (Tex. 2008) (quoting *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 764 (Tex. 2006)). In the context of the waiver of a right to arbitrate, prejudice "refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Cull*, 258 S.W.3d at 597 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)).

Peggy argues that Appellees, who had the burden of establishing prejudice, offered no testimony or other evidence of prejudice at the hearing and that, "[a]lthough the [trial court] took judicial notice of the file, little, if any, discovery is in the court's record."

The trial court found waiver because Peggy sought arbitration "only on the eve of trial, after conducting full discovery and filing motions going to the merits." As to prejudice specifically, the trial court found that it was "evident from the court's files and the trial court's recollection of the numerous hearings that a great deal of time and expense from all sides [had] been incurred in litigation" and that there had been "[a] huge amount of pretrial activity." The record shows that the request to arbitrate was filed more than four years after the lawsuit was filed and approximately one month before trial was set to begin. There is also evidence in the record of three different lawsuits, an appeal, depositions, challenges to the enforcement of a mediated settlement agreement, and discovery-related motions.

While Peggy is correct that there was "little, if any, discovery" on file with the trial court, she filed a motion to compel discovery, sought sanctions on several occasions because of discovery delays, and twice asked the trial court to modify its scheduling order to allow for full discovery. Moreover, there is some evidence of discovery in the record. In exchange for a promise not to object to the introduction of an incomplete exhibit at the hearing, Peggy's counsel conceded for purposes of

the record that five depositions occurred in the three weeks leading up to the arbitration hearing and that the parties had traveled to El Paso for one of those depositions. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (concluding unsworn statements of counsel to be considered evidence absent an objection by the opponent of the testimony). In addition, Peggy opposed the request for mediation and requested further discovery. Nonetheless, the parties mediated and entered into a Mediated Settlement Agreement. When the trial court later enforced the MSA, Peggy moved for a new trial and appealed. The parties continued the litigation, and more than two years after opposing the request for mediation, Peggy moved for binding arbitration.

After reviewing the record, we conclude that the trial court's findings are supported by the record, and we defer to those findings. Moreover, the record establishes prejudice from the delay and also shows the expense involved in the four years of protracted litigation in this case. Accordingly, we overrule Peggy's contention that there is no evidence of the second element of waiver, prejudice. Peggy's sole issue on appeal is overruled.

We affirm the order of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

February 5, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

9