Opinion filed November 29,
2012

 

                                                                       In The           

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00376-CV 

                                                    __________

 

                   SUPERIOR
BROADCAST PRODUCTS, Appellant

 

                                                             V.

 

                            DOUD
MEDIA GROUP, L.L.C., Appellee



 

                                   On
Appeal from the 104th District Court

                                                            Taylor
County, Texas

                                                    Trial
Court Cause No. 23479B 

 



 

                                                                  O
P I N I O N

            Appellee,
Doud Media Group, L.L.C., purchased a radio transmitter from appellant,
Superior Broadcast Products.  Doud Media experienced problems with the
transmitter and, later, filed this suit against Superior.  Doud Media alleged,
among other things, that the transmitter was defective and that Superior
breached an express warranty requiring it to repair or to replace the
transmitter.  The jury found in favor of Doud Media on its breach of warranty
claim and awarded it damages.  The trial court entered a final judgment in
accordance with the jury’s verdict.  Because we conclude that the evidence was
legally insufficient to support the amount of damages awarded by the jury to
Doud Media, we reverse and remand for a new trial on liability and damages.

            Doud
Media owns and operates two radio stations in Abilene, Texas.  Doud Media purchased
the subject radio transmitter from Superior in 2003.  Richard Doud, the managing
member of Doud Media, acted on behalf of Doud Media in connection with its
purchase of the radio transmitter from Superior.  James Joynt owned Superior
and acted on its behalf in connection with the transaction.  Elenos Broadcast
Equipment Company was the manufacturer of the transmitter.  Superior installed
the transmitter on Doud Media’s premises on April 18 and 19, 2003.  Richard
Doud and James Thompson, who was an engineer and an independent contractor for
Doud Media, were present during the installation.  Joynt and Steven Benzer, who
was an independent contractor for Superior, were also present during the
installation. 

            On April
18, 2005, Doud Media filed this suit against Superior and Elenos.  At that time,
Doud Media was not represented by a licensed attorney.  Instead, Richard Doud
signed the original petition in his capacity as managing member.  In its
petition, Doud Media alleged that the transmitter was defective.  It alleged
claims for fraud, and it also alleged that the defendants violated the Deceptive
Trade Practices-Consumer Protection Act[1]
(DTPA) in various respects, including the breach of implied warranties.

            Doud
Media did not serve its original petition on Superior until March 8, 2007.  On
March 19, 2007, Superior, represented by counsel, filed a “Motion to Dismiss
and for Attorneys Fees as Sanctions.”  Superior moved the trial court to
dismiss the case on the ground that Richard Doud’s representation of Doud Media
violated the requirement that a corporation, such as Doud Media, be represented
by a licensed attorney.  Superior requested the trial court to award it $1,000
in attorney’s fees as sanctions against Doud Media.

            Doud
Media obtained licensed counsel to represent it and thereafter, on March 26,
2007, filed its first amended original petition.  In that petition, it continued
to assert its DTPA and fraud claims and also added claims for breach of oral
and written agreements.  Doud Media alleged that the transmitter was defective,
that it requested the defendants to remedy the defect, and that the defendants
“refused to honor the one-year express warranty provided with the transmitter
and repair or replace the transmitter in violation of the agreement entered
into and in violation of various implied warranties.”  In the certificate of
service to the amended petition, Doud Media’s counsel of record certified that
the amended petition had been served by certified mail, return receipt
requested, on Superior’s counsel of record.

         On May
17, 2007, Superior filed a counterclaim in which it alleged that Doud Media
failed to pay it part of the purchase price for the transmitter.  Specifically,
Superior alleged that Doud Media paid $20,500 toward the purchase of the transmitter
but failed and refused to pay the remaining balance due of $20,500.  Superior
sought to recover the alleged amount due and also sought to recover its
attorney’s fees.  Further, on May 17, 2007, Superior filed an answer that
included affirmative defenses.  Superior asserted as an affirmative defense
that the applicable two-year statute of limitations barred Doud Media’s DTPA
claims.  To support its limitations defense, Superior alleged (1) that, because
Richard Doud was not a licensed attorney, Doud Media’s original petition “was
fundamentally defective and did not properly invoke the jurisdiction of the
court”; (2) that Doud Media did not file a valid petition until it filed its
amended petition in March 2007; and (3) that, therefore, Doud Media did not
file a valid petition within the applicable two-year limitations period.  As
another affirmative defense, Superior asserted that the doctrine of laches
barred Doud Media’s claims.

            On
June 2, 2008, Doud Media filed a second amended petition; it continued to
allege claims for breach of oral and written agreements, DTPA violations, and
fraud.  Additionally, in its second amended petition, Doud Media alleged that
“[t]he Defendants have continued to refuse to honor their express warranties.”

            On
September 3, 2009, Superior filed a traditional motion for summary judgment.  In
the motion, Superior argued that all of Doud Media’s claims were barred by
limitations.  Superior stated in the motion that “[t]his cause was filed on
April 18, 2005, based on events that allegedly occurred on April 18, 2003.”  Superior
asserted that Doud Media’s original petition, which was filed on April 18,
2005, was “illegal and void as a matter of law” because Richard Doud was not a
licensed attorney.  Superior also contended that the service of the original
petition on it was likewise “void.”  Because the original petition was “void,”
Superior contended that Doud Media failed to file this suit within the two-year
limitations period that is applicable to DTPA claims.  See Tex. Bus. & Com. Code Ann. § 17.565
(West 2011).  

            Doud
Media added its contract claims in its first amended original petition, which
was filed on March 26, 2007.  Superior stated in its motion for summary
judgment that “[t]he record is clear that the breach of contract cause of
action was not filed until March 28, 2007; three years, 11 months and 10 days
after the alleged incident.”  Superior asserted that, with respect to Doud
Media’s first amended petition, “[n]o citation was issued and no service was
attempted on [Superior].”  Superior contended that Doud Media failed to use due
diligence in serving it with the first amended petition and that, therefore, Doud
Media’s contract and fraud claims were barred by the applicable four-year
statutes of limitations.

            The
trial court held a hearing on Superior’s motion for summary judgment.  Following
the hearing, the trial court granted Superior’s motion for summary judgment as
to Doud Media’s DTPA claims and entered a partial summary judgment dismissing
the DTPA claims with prejudice.  The trial court denied Superior’s motion for
summary judgment as to Doud Media’s breach of contract and fraud claims.

            Doud
Media settled its claims against Elenos for $17,250 and nonsuited those claims;
the trial court entered an order dismissing those claims from the suit.

            The
case proceeded to a jury trial.  The jury found in favor of Doud Media on its breach
of warranty and fraud claims, awarding damages to Doud Media in the amount of
$231,000 on its breach of warranty claim and in the amount of $500 on its fraud
claim.  In response to a proportionate liability question, the jury found that
Superior caused 60% of Doud Media’s damages, that Elenos caused 30% of Doud
Media’s damages, and that Doud Media caused 10% of its damages.

            In
response to other questions, the jury found that Doud Media agreed to pay
Superior $37,500 for the radio transmitter and that Doud Media paid $16,000 to
Superior for the transmitter.  The jury awarded Superior $6,000 in attorney’s
fees.

            Doud
Media elected to recover the damages awarded by the jury on its breach of
warranty claim.  The trial court entered a judgment in accordance with the
jury’s verdict.  In arriving at an award for damages, the trial court reduced
the $231,000 in damages found by the jury on Doud Media’s breach of warranty
claim by 10%, which was Doud Media’s percentage of responsibility for its
damages as found by the jury.  The trial court also gave Superior a credit in
the amount of $17,250 for Doud Media’s settlement with Elenos, a credit of
$21,500 for the amount that the jury found Doud Media owed Superior for the
transmitter, and a credit for $6,000 for Superior’s attorney’s fees.  The trial
court ordered in its judgment that Doud Media recover from Superior the amount
of $163,150 in damages.

            Superior
presents four issues for review.  In its first issue, Superior contends that all
of Doud Media’s claims were barred by limitations and laches and that,
therefore, the trial court erred when it denied its motion for summary
judgment.  In its second issue, Superior contends that the trial court erred when
it submitted questions to the jury on Doud Media’s breach of warranty claims.  In
its third issue, Superior contends that the trial court erred when it submitted
a question to the jury that allowed it to award consequential damages.  In its
fourth issue, Superior challenges the legal sufficiency of the evidence
supporting the damages awarded by the jury to Doud Media. 

            Superior
challenges the trial court’s denial of its motion for summary judgment on Doud
Media’s contract and fraud claims.  Generally, appellate courts do not have
jurisdiction to review the denial of a motion for summary judgment.  Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996); Hines v. Comm’n
for Lawyer Discipline, 28 S.W.3d 697, 700 (Tex. App.—Corpus Christi 2000,
no pet.); United Parcel Serv., Inc. v. Cengis Tasdemiroglu, 25 S.W.3d
914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  When the trial court’s
denial of a motion for summary judgment is followed by a trial on the merits, the
order denying the summary judgment cannot be reviewed on appeal.  Ackermann
v. Vordenbaum, 403 S.W.2d 362, 365 (Tex. 1966); United Parcel Serv.,
25 S.W.3d at 916; Carr v. Weiss, 984 S.W.2d 753, 760 (Tex. App.—Amarillo
1999, pet. denied).  The issues in this case were tried on the merits.  We have
no jurisdiction to review the trial court’s denial of Superior’s motion for
summary judgment.  Therefore, we do not address Superior’s first appellate
issue.       

            We
note that Superior waived appellate review of its limitations and laches
issues.  Limitations and laches are affirmative defenses.  Tex. R. Civ. P. 94.  A party asserting
an affirmative defense bears the burden to plead, prove, and secure findings on
the defense.  Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 517
(Tex. 1988); Pitts & Collard, L.L.P. v. Schechter, 369 S.W.3d 301,
325 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  In this case, Superior did
not present evidence that supported its limitations and laches defenses at
trial.  The record does not show that Superior requested jury questions or
instructions on its limitations and laches defenses.  The failure to request a
jury instruction on an affirmative defense results in waiver of that ground by
the party relying on it unless the issue was conclusively established.  XCO
Prod. Co. v. Jamison, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.]
2006, pet. denied).  Accordingly, Superior waived appellate review of its
affirmative defenses of limitations and laches.

            Even
if Superior had preserved error on its affirmative defenses, the evidence would
support a finding that Doud Media filed suit on its breach of warranty and
fraud claims, and served Superior with its suit on those claims, within the
applicable limitations periods.  The statute of limitations period for a breach
of warranty claim is four years.  Tex. Bus.
& Com. Code Ann. § 2.725(a), (b) (West 2009); PPG Indus., Inc. v.
JMB/Houston Ctrs. Partners Ltd. P’ship, 146 S.W.3d 79, 92–93 (Tex. 2004).  Likewise,
the statute of limitations period for a fraud claim is four years.  Tex. Civ. Prac. & Rem. Code Ann. §
16.004(a)(4) (West 2002).

            For
the purpose of our analysis, we assume without deciding that the applicable four-year
statutes of limitations began to run on the date that Superior completed the
installation of the transmitter (April 19, 2003), instead of on a later date.  See
Section 2.725(b) (“[W]here a warranty explicitly extends to future
performance of the goods and discovery of the breach must await the time of
such performance the cause of action accrues when the breach is or should have
been discovered.”).  Doud Media filed its first amended petition that contained
the breach of contractual warranty and fraud claims on March 26, 2007, which
was within the four-year limitations period.

            The
record shows that Superior made a general appearance in this case before Doud
Media filed its first amended petition.  A party enters a general appearance in
a case when it (1) invokes the judgment of the court on any question other than
the court’s jurisdiction, (2) recognizes by its acts that an action is properly
pending, or (3) seeks affirmative action from the court.  Exito Elecs. Co., Ltd.
v. Trejo, 142 S.W.3d 302, 304 (Tex. 2004); Klingenschmitt v.
Weinstein, 342 S.W.3d 131, 134 (Tex. App.—Dallas 2011, no pet.).  In this
case, on March 19, 2007, Superior filed a motion to dismiss and for attorney’s
fees as sanctions.  In its motion, Superior sought affirmative action from the
trial court in the form of a dismissal of the suit and in the form of an award
of sanctions against Doud Media.  By seeking such affirmative action, Superior made
a general appearance in the case.  Klingenschmitt, 342 S.W.3d at 134; In
re G.L.A., 195 S.W.3d 787, 792 (Tex. App.—Beaumont 2006, pet. denied).

            An
appearance in a case has “the same force and effect as if the citation had been
duly issued and served as provided by law.”  Tex.
R. Civ P. 120; In re A.L.H.C., 49 S.W.3d 911, 916 (Tex. App.—Dallas
2001, pet. denied).  Generally, service of citation is required only upon the
filing of an original petition or lawsuit and is not required when amended or
supplemental pleadings are filed.  See Tex.
R. Civ. P. 21, 99.  Rule 21a of the Rules of Civil Procedure applies to
all pleadings required to be served under Rule 21 other than the original
petition and except as otherwise expressly provided in the rules.  See Tex. R. Civ. P. 21a; In re E.A.,
287 S.W.3d 1, 4 (Tex. 2009).  Once Superior made a general appearance, Doud
Media could properly serve its amended petition by complying with the filing
and service requirements of Rule 21a, which provides that such pleadings may be
served by delivering a copy to the other party’s attorney of record.  In the
certificate of service to the first amended petition, Doud Media’s counsel
certified that it had served Superior’s counsel of record by certified mail.  A
certificate of service is prima facie evidence of the fact of service.  In
re E.A., 287 S.W.3d at 5.  The record supports the conclusion that Doud
Media filed and properly served its first amended petition within the four-year
limitations period for breach of warranty and fraud claims.

            To invoke
the equitable doctrine of laches, the moving party ordinarily must show (1) an
unreasonable delay by the opposing party in asserting its rights and (2) a good
faith and detrimental change in position by the moving party because of the
delay.  In re Laibe Corp., 307 S.W.3d 314, 318 (Tex. 2010) (orig.
proceeding); Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 80 (Tex. 1989). 
“Generally in the absence of some element of estoppel or such extraordinary
circumstances as would render inequitable the enforcement of petitioners’ right
after a delay, laches will not bar a suit short of the period set forth in the
limitation statute.”  Caldwell v. Barnes, 975 S.W.2d 535, 538 (Tex.
1998) (quoting Barfield v. Howard M. Smith Co. of Amarillo, 426 S.W.2d
834, 840 (Tex. 1968)).  Laches should not bar an action on which the applicable
statute of limitations has not run unless to allow the action “would work a
grave injustice” on the party asserting the laches defense.  Culver v.
Pickens, 176 S.W.2d 167, 170 (Tex. 1943); Brewer v. Nationsbank of Texas,
N.A., 28 S.W.3d 801, 804 (Tex. App.—Corpus Christi 2000, no pet.).  

            Superior
did not present evidence supporting its laches defense.  But, even if it had preserved
error on the issue, laches would not bar Doud Media’s suit.

            The
trial court submitted questions to the jury as to whether a warranty existed
and, if so, whether Superior breached the warranty.  In Question No. 3 of the
charge, the trial court asked the jury: “Did [Superior] provide a warranty for
the radio transmitter which was purchased by [Doud Media]?”  The jury answered
Question No. 3: “Yes.”  In Question No. 4, the trial court asked the jury: “Was
the failure, if any, of [Superior] to comply with a warranty, if any, a
producing cause of damages to [Doud Media]?”  The trial court included in
Question No. 4 definitions of “producing cause” and “failure to comply with a
warranty.”  The jury answered Question No. 4: “Yes.”

            In
its second issue, Superior argues that the trial court erred when it submitted
warranty questions to the jury.  First, Superior argues that the trial court
dismissed Doud Media’s breach of warranty claims when it dismissed the DTPA
claims and that, because the warranty claims were dismissed, the trial court
erred when it submitted them to the jury.  Second, Superior argues that the
trial court erred when it submitted warranty questions to the jury because
there was no evidence as to the specific nature of the alleged warranty.

            Rule
278 of the Texas Rules of Civil Procedure requires that the trial court submit jury
questions that are supported by the written pleadings and the evidence.  Tex. R. Civ. P. 278; Union Pac. R.R.
Co. v. Williams, 85 S.W.3d 162, 166 (Tex. 2002); Schrock v. Sisco,
229 S.W.3d 392, 393 (Tex. App.—Eastland 2007, no pet.).  We review a challenge
to a trial court’s jury charge under an abuse of discretion standard.  Tex.
Dep’t of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990); Schrock,
229 S.W.3d at 393.  

Superior’s
first argument is based on the premise that the trial court dismissed Doud
Media’s breach of warranty claims when it dismissed its DTPA claims. Under
Section 17.50(a)(2) of the DTPA, a consumer may maintain an action when the
breach of an express or implied warranty constitutes a producing cause of
economic or mental anguish damages.  Tex.
Bus. & Com. Code Ann. § 17.50(a)(2) (West 2011).  Doud Media alleged
that Superior violated the DTPA when it breached the implied warranty of
fitness for a particular purpose and the implied warranty of merchantability
with respect to the transmitter.  However, Doud Media also alleged, independent
of its DTPA claims, that Superior breached express warranties relating to the
transmitter.  The DTPA does not provide the sole remedy for breach of warranty
claims.  See PPG Indus., 146 S.W.3d at 89.  Rather, it provides an
additional remedy that overlaps with common-law causes of action for breach of
warranty.  Id.  In this case, Doud Media could assert its breach of
warranty claims as common-law claims, DTPA claims, or both.  Id.

            In
its partial summary judgment, the trial court dismissed Doud Media’s DTPA
claims, and we express no opinion on the merits of those claims.  Based on the
summary judgment, Doud Media could not recover under the DTPA based on the
breach of any warranty.  The partial summary judgment did not dispose of Doud
Media’s non-DTPA breach of warranty claims.  The trial court did not dismiss Doud
Media’s breach of express warranty claims.  Because the trial court did not
dismiss those claims, Superior’s first argument is based on a false premise and
must fail.   

            Superior
contends that Doud Media did not present any evidence as to the specific nature
of the alleged warranty.  A trial court may refuse to submit a jury question
only if no evidence exists to warrant its submission.  Elbaor v. Smith,
845 S.W.2d 240, 243 (Tex. 1992); Sewing v. Bowman, 371 S.W.3d 321, 339
(Tex. App.—Houston [1st Dist.] 2012, pet. filed).  Conflicting evidence
presents a fact question for the jury to decide.  Brown v. Goldstein,
685 S.W.2d 640, 641–42 (Tex. 1985); Sewing, 371 S.W.3d at 339.

            Doud
Media presented testimony and documentary evidence relating to the specific nature
of express warranties for the transmitter.  Doud Media did not sign a written
contract for the purchase of the transmitter.  Superior provided a “Sales
Quotation” to Doud Media before Doud Media purchased the transmitter.  In the “Sales
Quotation,” Superior stated that “[a]ll Superior Transmitters have a one year
warranty against defects in material and workmanship.”  Richard Doud testified
that Joynt told him that Superior offered a one-year warranty; that Elenos
offered a two-year warranty; that Superior would honor Elenos’s two-year
warranty; and that the one- and two-year warranties covered parts that failed
on the transmitter, replacement of those parts, and service.  Elenos provided a
document entitled “General Terms of Sale” to Superior in connection with
Elenos’s sale of equipment to Superior.  A “Warranty” section in the document
provided, in part, as follows:    

The equipment
supplied by Elenos srl is covered by 24 months warranty; the warranty period
starts on the date of purchase and the coverage extends both to the original
purchaser and to any subsequent buyers.  The warranty covers all faults caused
by defective components.

 

Thus, Doud Media
presented evidence that one-year and two-year express warranties existed with
respect to the transmitter.

            In
November 2005, Benzer sent an e-mail to a representative of Elenos.  In the
e-mail, Benzer stated that he had contacted Richard Doud regarding “the repair
of his failed Elenos T31KW radio broadcast transmitter.”  Benzer also stated
that, based on a lengthy discussion that he had had with Thompson, he was of
the opinion “that the broadcast transmitter failure [that Thompson] has
described is the result of an incorrect assembly when the transmitter was
initially built.”  Benzer also stated that Thompson had observed that “many
critical fasteners in the power amplifier cavity . . . had not been properly
tightened.”  Benzer further stated that the improper assembly had led to “a
catastrophic failure of certain of the PA cavity components, including the
thermionic vacuum tube socket contacts.”  Benzer concluded that, “[i]f this [was]
true, [he was] also of the opinion that the repair of this transmitter should
be covered under the terms and conditions of the original warranty.”  The
evidence was undisputed that Superior did not repair or replace the transmitter
after Benzer sent this e-mail to the Elenos representative.

            Joynt
testified that Superior provided Doud Media a one-year warranty against defects
in material and workmanship, which Joynt said was a parts warranty, on the
transmitter.  Joynt said that the warranty was not for service.  He said that
Superior never offered Doud Media a two-year warranty from Elenos.  Joynt
initially said that Elenos did not offer Superior a two-year warranty when it
purchased the transmitter from Elenos.  Joynt acknowledged in later testimony
that Elenos offered Superior a two-year parts warranty.  Joynt then said that a
customer, such as Doud Media, would have a two-year parts warranty from Elenos. 
He said that “[t]he first year the parts warranty would come through Superior”
and that “[t]he second year the parts warranty would come directly through
Elenos.” 

            In
summary, Richard Doud testified that one-year and two-year warranties existed
on the transmitter and that Superior agreed to honor the warranty the second
year.  Richard Doud said that the warranties covered failed parts, replacement
of those parts, and service.  The documentary evidence supported Doud Media’s
claims that one- and two-year express warranties existed.  Joynt’s testimony
about the nature of the warranties conflicted with Richard Doud’s testimony.  The
conflicting evidence presented fact issues for the jury to decide.  Brown,
685 S.W.2d at 641–42; Sewing, 371 S.W.3d at 339.  Therefore, the
trial court was required to submit the warranty questions to the jury.

            The
trial court did not abuse its discretion when it submitted Question Nos. 3 and
4 to the jury.  Superior’s second issue is overruled.

Superior
argues in its third issue that the trial court erred when it submitted a
question on consequential damages to the jury.  In Question No. 5 of the charge,
the trial court asked the jury: 

What
sum of money, if any, if paid now in cash, would fairly and reasonably
compensate [Doud Media] for its damages, if any, that resulted from such
failure to comply with the warranty?

 

            Consider the following elements of damages, if any, and none
other.

 

A. 
Loss of use;

 

B. 
Lost profits, in the past;

 

C. 
Cost of Replacement of the subject transmitter;

 

D. 
Cost of the unsuccessful repairs and replacement transistors;

 

            E. 
Reasonable and necessary engineering or consulting fees which were incurred in
the unsuccessful effort to repair the defective transmitters; and

 

F. 
Reasonable and necessary attorney’s fees.

 

Do
not add any amount for interest on the damages, if any.

 

            Answer
in dollars and cents, if any.

 

            Answer:
_________ 

 

In its
pleadings, Doud Media sought recovery of damages for the items listed in A
through F of Question No. 5.   In response to Question No. 5, the jury awarded
damages to Doud Media in the amount of $231,000.

            Consequential
damages are those damages that result naturally, but not necessarily, from a
party’s breach of contract.  Basic Capital Mgmt., Inc. v. Dynex Commercial,
Inc., 348 S.W.3d 894, 901 (Tex. 2011); Arthur Andersen & Co. v.
Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997).  Consequential damages
are not recoverable unless the parties contemplated, at the time of contract
formation, that such damages would be a probable result of the breach.  Basic
Capital, 348 S.W.3d at 901; Mead v. Johnson Group, Inc., 615 S.W.2d
685, 687 (Tex. 1981).  Thus, to be recoverable, consequential damages must be
foreseeable and directly traceable to the breach and result from it.  Basic
Capital, 348 S.W.3d at 901; Stuart v. Bayless, 964 S.W.2d 920, 921
(Tex. 1998).

            Superior
states in its brief that “[t]he inclusion of the Jury Charge Question No. 5 on
consequential damages for the breach of the alleged warranty without a
foreseeability requirement was error.”  Based on this statement, Superior may
be arguing that the trial court erred by failing to instruct the jury that it
could only award damages that were a foreseeable consequence of a breach of
warranty.  Or, Superior may be arguing that the trial court erred when it submitted
Question No. 5 to the jury because there was no evidence that the damages were
foreseeable.

            Superior
did not request the trial court to instruct the jury to consider damages that were
a natural, probable, and foreseeable consequence of the breach of warranty.  See
Mood v. Kronos Prods., Inc., 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied)
(jury instructed to consider lost profits that were the natural, probable, and
foreseeable consequence of party’s failure to comply with agreement).  Rule 278
of the Rules of Civil Procedure provides that the “[f]ailure to submit a
definition or instruction shall not be deemed a ground for reversal of the
judgment unless a substantially correct definition or instruction has been
requested in writing and tendered by the party complaining of the judgment.”  To
preserve error, the complaining party must tender a written request to the
trial court for submission of the definition or instruction, which is in
substantially correct wording, and obtain a ruling on the request.  Kennedy
Ship & Repair, L.P. v. Pham, 210 S.W.3d 11, 27 (Tex. App.—Houston [14th
Dist.] 2006, no pet.).  Because Superior did not request an instruction as to
the foreseeability of damages, it did not preserve a complaint for appellate
review that the trial court erred by failing to include such an instruction in
the jury charge.

Doud
Media sought to recover the following “elements of damages”: loss of use
damages; past lost profits; the cost of replacing the subject transmitter; the
costs of unsuccessful repairs of the transmitter and of replacement
transmitters; reasonable and necessary engineering and consulting fees incurred
in connection with efforts to repair the defective transmitter; and reasonable
and necessary attorney’s fees.

The
evidence supported the trial court’s decision to submit a consequential damages
question to the jury.  Joynt acknowledged during his testimony that a radio
station owner’s ability to earn money is directly connected to the station’s
abilities to broadcast and to advertise.  Joynt testified that the owner of a
radio station is “losing money” if the station is off the air.  This testimony
demonstrated that it was foreseeable to Superior that Doud Media would lose
money if a defective transmitter prevented its station from being on the air
and that it would continue to lose money until the defective transmitter was
repaired or replaced.  Based on the evidence, we conclude that lost profits to
Doud Media constituted a foreseeable consequence of a breach of warranty by
Superior.  It was also foreseeable that Doud Media would spend money to repair
or to replace a defective transmitter if Superior breached a warranty to repair
or to replace it.  Therefore, the costs incurred by Doud Media in attempting to
repair the transmitter and in replacing the transmitter were also foreseeable
consequences of a breach of warranty by Superior.    

Because
the types of damages Doud Media sought to recover were natural, probable, and
foreseeable consequences of a breach of warranty by Superior, the trial court
did not err when it submitted a consequential damages question to the jury.  Superior’s
third issue is overruled. 

In
its fourth issue, Superior argues that the evidence was legally insufficient to
support the jury’s damages award of $231,000.  Specifically, Superior contends
that there was no evidence to support an award for lost profits damages.  When
we analyze a legal sufficiency challenge, we must determine whether the
evidence at trial would enable reasonable and fair-minded people to reach the
verdict under review.  City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  We must review the evidence in the light most favorable to the
challenged finding, crediting any favorable evidence if a reasonable factfinder
could and disregarding any contrary evidence unless a reasonable factfinder
could not.  Id. at 821–22, 827.  We may sustain a no-evidence or legal sufficiency
challenge only when (1) the record discloses a complete absence of a vital
fact, (2) the court is barred by rules of law or evidence from giving weight to
the only evidence offered to prove a vital fact, (3) the only evidence offered
to prove a vital fact is no more than a scintilla, or (4) the evidence
conclusively establishes the opposite of a vital fact.  Id. at 810
(citing Robert W. Calvert, “No Evidence” and “Insufficient evidence” Points
of Error, 38 Texas L. Rev.
361, 362–63 (1960)); Pendergraft v. Carrillo, 273 S.W.3d 362, 366 (Tex.
App.—Eastland 2008, pet. denied).

Lost
profits are damages for the loss of net income to a business and, broadly
speaking, reflect income from lost business activity, less expenses that would
have been attributable to that activity.  Examination Mgmt. Servs., Inc. v.
Kersh Risk Mgmt., Inc., 367 S.W.3d 835, 840 (Tex. App.—Dallas 2012, no
pet.); Bowen v. Robinson, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied).  The calculation of lost profits must be based on
net profits, not gross revenues.  Holt Atherton Indus., Inc. v. Heine,
835 S.W.2d 80, 83 n.1 (Tex. 1992); Examination Mgmt. Servs., 367 S.W.3d
at 840.  

Recovery
for lost profits does not require that the loss be susceptible of exact
calculation.  ERI Consulting Eng’rs, Inc. v. Swinnea, 318 S.W.3d 867,
876 (Tex. 2010) (quoting Holt Atherton, 835 S.W.2d at 84).  However, the
injured party must do more than show that it suffered some lost profits.  Id. 
The amount of the loss must be shown by competent evidence with reasonable
certainty.  Id.  What constitutes reasonably certain evidence is a fact-intensive
determination.  Id.  As a minimum, opinions or estimates of lost profits
must be based on objective facts, figures, or data from which the amount of
lost profits can be ascertained.  Id.

Doud
Media offered limited testimony from Richard Doud in an attempt to support its
lost profits allegations.  During direct examination, Richard Doud testified as
follows:    

Q.  Okay.  Let’s talk
about how this radio transmitter and the repeated serial failures of the radio
transmitter has affected your business.

 

            A.  Okay.

 

            Q.  And let’s talk about
the period from April 2003 to the purchase of the new unit, and that was in
2005 or 2006?

 

            A.  Correct, one of the
two.  I don’t --

            

            Q.  You --

 

            A.  I don’t remember off
the top of my head which year it was.

 

            Q.  Let’s use 2005.

 

            A.  Okay.

 

            Q.  As your E-mails and
memos have demonstrated, you’re having power outages during sweeps periods?

 

            A.  Not power outages,
transmitter failures.

 

            Q.  And if you’re having a
transmitter failure and those advertisers are unhappy, they’re not going to
advertise with you?

 

            A.  Correct.

 

            Q.  Do you have knowledge
of, again, during that period the amount of money which you lost, the amount of
revenue which you lost?

 

            A.  Based on the
ratings-to-revenue conversion, I can certainly give a rough estimate.  

 

            Q.  What
is it?

 

At this point,
Superior’s counsel objected to further damages testimony from Richard Doud.  The
trial court overruled the objection, and Richard Doud’s testimony continued as
follows:        

            Q.  Rich, I think we were
asking you a few questions about estimations of your damages?  

 

            A.  Yes.

 

            Q.  And we’ve gone through
repairs; we’ve gone through replacement; we have that information.  But what
I’m trying to figure out now is during this three-year period, how did it
affect your business, and if you can quantify that and put a number to it, let
me know.

 

            A.  I can, and it was
significant.  

 

            Q.  Let me know.  What’s
the figure or the estimate?

 

            A.  $1,032,000.

 

            Q.  And tell this jury where
that comes from.

 

A. 
That comes from a ratings-to-revenue conversion.  In this market usually one
rating share is worth $100,000 worth of revenue.  Our ratings declined based on
the amount of time that the transmitter was either off the air or at low power. 
So if we started out, which we did when we installed the transmitter, at an 8.5
share, by the time we had -- we actually changed frequency in order to stop the
bleeding, in order to stop the station from going off the air, moved the
station from 96.1 to 95.1 in order to save the listeners that we had left.  So
when you’re talking about going from an 8.5 to a four, you’re looking within
the course of a couple of years losing $400,000 worth of revenue -- $450,000
worth of revenue within that time frame.  So that’s where that information
comes from.

 

Richard
Doud’s testimony was legally insufficient to establish an amount of lost
profits with reasonable certainty.  He testified that he could give a “rough
estimate” of the amount of revenue that was lost.  Lost revenue is not the
correct measure of damages.  Rather, lost net profits is the correct measure of
damages.  Holt Atherton, 835 S.W.2d at 83 n.1; Examination Mgmt.
Servs., 367 S.W.3d at 840.  Richard Doud provided no testimony as to Doud
Media’s lost profits.  His “rough estimate” of $1,032,000 in lost revenues was
based on a loss of ratings share from 8.5 to 4.  He provided no testimony as to
when the ratings share began to decrease and the rate that it decreased.  Although
he did not know when Doud Media replaced the transmitter, he used the year 2005
to estimate lost revenues.  He did not specify the month in 2005 that he used
to make his calculation.  Even if lost revenue was the correct measure of
damages, Richard Doud did not support his “rough estimate” of lost revenue with
objective facts, figures, or data; therefore, Doud Media failed to establish
its lost revenues by competent evidence with reasonable certainty.  The
evidence was legally insufficient to support an award of lost profits damages. 
See Holt Atherton, 835 S.W.2d at 84.                              

             Doud
Media presented some evidence supporting awards on some elements of damages.  For
example, Richard Doud estimated that Doud Media spent $25,000 in connection
with attempts to repair the transmitter that it purchased from Superior.  He
also testified that the cost of the replacement transmitter was about $25,000. 
The evidence supported an award of some damages on three of the elements of
damages (C, D, and E) that the jury was instructed to consider.

            The
jury’s damages award of $231,000 to Doud Media greatly exceeded the costs
incurred by Doud Media to repair and to replace the Superior transmitter.  The
jury’s award necessarily included a substantial amount of money for lost
profits damages.  Because the evidence was legally insufficient to support an
award for lost profits damages, we sustain Superior’s fourth issue.

            Ordinarily,
when there is legally insufficient evidence to support a finding, we reverse
and render.  Holt Atherton, 835 S.W.2d at 86; Pendergraft, 273
S.W.3d at 368.  However, in this case, Question No. 5 of the charge did not
require the jury to segregate the damages awarded for the various elements of
damages.  Based on the record, we cannot determine how much money the jury
awarded Doud Media for lost profits damages or how much money, if any, the jury
awarded Doud Media for any of the other elements of damages.  Therefore, we
must remand the case for a new trial on all damages issues.  Tex. R. App. P. 43.3; Pendergraft,
273 S.W.3d at 368; Tex. Indus., Inc. v. Vaughan, 919 S.W.2d 798, 804
(Tex. App.—Houston [14th Dist.] 1996, writ denied).  Because we are remanding
for a new trial on claims involving unliquidated damages, we also remand for a
new trial on liability.  Tex. R. App. P.
44.1(b); Pendergraft, 273 S.W.3d at 368; see Lucas v. Clark, 347
S.W.3d 800, 803 (Tex. App.—Austin 2011, pet. denied) (lost profits are
unliquidated damages); First Nat’l Bank of Irving v. Shockley, 663
S.W.2d 685, 689 (Tex. App.—Corpus Christi 1983, no writ) (unliquidated damages
include, among other things, lost profits and consequential damages). 




 

This
Court’s Ruling

            The judgment of the
trial court is reversed, and this case is remanded to the trial court for a new
trial on liability and damages.  

 

                                                

                                                                                    JIM
R. WRIGHT

                                                                                    CHIEF
JUSTICE

November 29,
2012

Panel consists of: Wright, C.J.,

McCall, J., and Hill.[2]

 









                [1]Tex. Bus. & Com. Code Ann.
§§ 17.41–.63 (West 2011 & Supp. 2012).





                [2]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth, sitting by assignment.